2:25-cv-04824-RMG      Date Filed 06/02/25      Entry Number 94       Page 1 of 7
2:18-mn-02873-RMG     Date Filed 06/02/25      Entry Number 7237     Page 1 of 7
     Case MDL No. 2873     Document 3536     Filed 06/02/25     Page 1 of 7

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

IN RE: AQUEOUS FILM-FORMING FOAMS
PRODUCTS LIABILITY LITIGATION                                      MDL No. 2873

## TRANSFER ORDER

**Before the Panel**:[*] We are presented with three motions in this docket.[1] First, 3M Company moves under 28 U.S.C. § 1407(c) to transfer the *City of Savannah* action listed on Schedule A to the District of South Carolina for inclusion in MDL No. 2873. Plaintiff opposes the motion to transfer. Defendants Innovative Chemical Technologies, Inc., and ICT Industries, Inc., filed a response disputing assertions made in 3M's motion and supporting expert declaration but taking no position on transfer. Second, plaintiffs in the *City of Wausau* and *Signature Flight Support* actions listed on Schedule A move under Panel Rule 7.1 to vacate our orders conditionally transferring those actions to MDL No. 2873. Defendants in each action[2] oppose the motions.

After considering the argument of counsel, we find that the actions listed on Schedule A involve common questions of fact with the actions transferred to MDL No. 2873, and that transfer under 28 U.S.C. § 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. In our order centralizing this litigation, we held that the District of South Carolina was an appropriate Section 1407 forum for actions in which plaintiffs allege that aqueous film-forming foams (AFFFs) used at airports, military bases, or certain industrial locations caused the release of per- or polyfluoroalkyl substances (PFAS) into local groundwater and contaminated drinking water supplies. The MDL actions share factual questions concerning the use and storage of AFFFs; the toxicity of PFAS and the effects of these substances on human health; and these substances' chemical properties and propensity to migrate in

---

[*] Judges David C. Norton and Dale A. Kimball did not participate in the decision of this matter.

[1] 3M also moved to transfer the Eastern District of Wisconsin *Varline* action to MDL No. 2873. We deny transfer of *Varline* in a separate order for the reasons explained therein.

[2] Defendants Wausau Paper Corp., Essity Operations Wausau LLC, Essity Professional Hygiene North America LLC, Graphic Packaging International, Terx Shredding & Recycling LLC, Brokaw Holdings, LLC, and Nelson Name Plate Company oppose the motion in the Western District of Wisconsin *City of Wausau* action. Defendant Johnson Controls, Inc., and non-parties Tyco Fire Products LP and Chemguard, Inc., oppose the motion in the Eastern District of Wisconsin *Signature Flight Support* action.

- 2 -

groundwater supplies. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018).

Turning first to *City of Savannah*, plaintiff alleges that its drinking water supply has been contaminated by PFAS stemming from various chemical, textile, paper mill, and other manufacturing facilities that discharge into the Savannah River basin, connected waterways, and Abercorn Creek, where plaintiff's water intake is located. Plaintiff states that it has opted out of the 3M and DuPont water provider settlements in the MDL and explicitly disavows claims relating to AFFF use or disposal. 3M's argument for transfer is based primarily on an expert declaration by John Kondziolka, an environmental engineer, who opines "to a reasonable degree of scientific certainty" that the Savannah watershed has been contaminated with AFFF from various industrial and other facilities, none of which are identified in the City's complaint but which—according to Mr. Kondziolka—are as close or closer to Savannah's water intake as the sites identified in the complaint. Defendants Innovative Chemical Technologies, Inc., and ICT Industries, Inc., submitted an affidavit by Innovative's president disputing facts asserted and conclusions drawn by Mr. Kondziolka regarding the impact on Savannah's water supply of a 2020 AFFF incident at an Innovative facility.

The Kondziolka declaration does not support transfer. The Panel has declined to rely on such expert declarations, concluding that they show only the possibility of AFFF contamination of a water supply. *See, e.g.,* Order Denying Transfer, MDL No. 2873, ECF No. 541 (declining to rely on expert declaration identifying sources of potential AFFF contamination of water supply); Order Denying Transfer, MDL No. 2873, ECF No. 3419 (same). As we have observed, the Panel is "neither well-situated nor inclined to weigh the merits of the parties' opposing characterizations of . . . opinions" presented in an expert declaration. *Id.* at 1.

We conclude, however, that transfer is warranted because the water supply at issue in *City of Savannah* is already at issue in an action in the MDL. Plaintiff in that action—*Allan v. 3M Co., et al.*, D. South Carolina, C.A. No. 24-07344—alleges that he suffers from ulcerative colitis from drinking AFFF-contaminated water "from municipal water providers including but not limited to: Savannah I&D (GA)." *Allan* Compl. ¶ 170.[3] The Panel previously has concluded that transfer is justified where such overlap exists. *See, e.g.,* Transfer Order, MDL No. 2973 (J.P.M.L. June 5, 2023), ECF No. 1927 (transferring *Broy* putative class action where plaintiffs alleged injury from City of Corona's water supply and that City's water provider had brought suit in MDL alleging AFFF contamination of same water supply); Transfer Order, MDL No. 2873 (J.P.M.L. Oct. 4, 2024), ECF No. 2938 (transferring *Long* action where plaintiffs alleged PFAS contamination of their properties from groundwater also at issue in municipalities' MDL suits alleging AFFF contamination).

---

[3] Savannah's water is supplied by the Savannah Industrial and Domestic (I&D) System. 3M states that there also are at least six plaintiffs in the MDL who have submitted fact sheets claiming they were exposed to AFFF from drinking Savannah's municipal water. 3M did not provide copies of these fact sheets (which it states are subject to a protective order), and we do not rely on them in finding that transfer is warranted.

- 3 -

The City contends that the overlap between its action and *Allan* does not support transfer, and that transfer would be unfair and inconvenient for the parties. It states that the "vast majority" of the defendants in its action are not named in any MDL action, no defendant other than 3M has requested transfer, and the City opted out of the 3M water supplier settlement in favor of litigating its action outside the MDL. The City points out that *Allan* is a single personal injury action filed by a resident of California and argues that the complaint contains only "a passing reference to AFFF contamination in Savannah." The City also notes that its action primarily names defendants that are not named in the *Allan* case, and that *Allan* names eighteen defendants that are not named in the City's complaint. Finally, the City contends, the Panel's orders transferring cases such as *Long* and *Broy* are not on all fours because, in those instances, the actions in the MDL were brought by a municipality or water supplier, rather than by an individual plaintiff alleging injury from contaminated drinking or groundwater as in the *Allan* case.

The disparity between the defendants named in the City's action and *Allan* is not an impediment to transfer. *See* Transfer Order at 4, MDL No. 2873 (J.P.M.L. June 7, 2021), ECF No. 1020 (transferring action involving groundwater at issue in MDL actions over argument that it "will introduce many new sites, parties, and non-AFFF sources of contamination"). Moreover, while in *Long* and *Broy* the actions in the MDL had been brought by municipalities or water suppliers rather than by an individual plaintiff, we have declined in the past to "essentially engage in a merits review of the complaints [in an MDL action and a potential tag-along action] based on the amount of detail of plaintiffs' respective pre-suit investigations." *See Broy* Transfer Order at 3. It is sufficient that *City of Savannah* involves the same water supply already at issue in the MDL in the *Allan* case.

Turning next to *City of Wausau*, this action was brought by the City of Wausau against the owners and operators of various paper mills and other industrial facilities located in the floodplain of the Wisconsin River,[4] alleging that the City's drinking water, sourced from six municipal wells, is contaminated with PFAS discharged from those facilities. The City of Wausau also has filed an action against 3M and other traditional AFFF defendants directly in the MDL,[5] alleging that its drinking water—drawn from the same six municipal wells—is contaminated with PFAS, including from AFFF sources.

The City of Wausau opposes transfer of its Western District of Wisconsin action, arguing that the action involves no allegations of AFFF contamination and names no defendants that manufactured, supplied, or used AFFF or AFFF products. It maintains that this is a "critical distinction," citing the Panel's order declining to transfer a PFAS action (*Hoffnagle*) brought by customers of the Connecticut Water Company (CWC) despite that in another action, pending in the MDL, the water company alleged that its water was contaminated with PFAS stemming in part from the use and disposal of AFFF. *See* Order Denying Transfer, MDL No. 2873 (J.P.M.L. Jan. 31, 2024), ECF No. 2287. The Panel concluded that transfer of *Hoffnagle* was not warranted

---

[4] Wausau Paper Corp., Essity Operations Wausau LLC, Essity Professional Hygiene North America LLC, Terx Shredding & Recycling LLC, Brokaw Holdings, LLC, Graphic Packaging International, and Nelson Name Plate Company.

[5] *City of Wausau v. 3M Co., et al.*, No. 2:23-cv-02923 (D.S.C.).

- 4 -

because "Plaintiffs' complaint is focused on CWC's alleged obligations to its customers to provide water free from PFAS contamination" and "[t]he source of the alleged PFAS-contamination at issue in *Hoffnagle* is, to a large extent, irrelevant to plaintiffs' claims against CWC." *Id.* at 2. The *Hoffnagle* order is not on point. Although *City of Wausau*, like *Hoffnagle*, does not name any traditional AFFF defendant, it will involve discovery as to the sources of the PFAS contaminants in the same water supply drawn from the same six municipal wells at issue in the City's MDL action. Given this overlap as to a central factual issue in both cases, transfer is warranted.

The City of Wausau also argues that there will be no opportunities for common discovery in the two *City of Wausau* actions. This is so, it maintains, for two reasons. First, the City's claims against 3M in its direct-filed action have been resolved (with no admission of liability by 3M) via the 3M water provider class settlement. Second, the City argues, discovery and other pretrial proceedings in the MDL water provider actions have essentially concluded. We are not persuaded that this is so.[6] The transferee court has not suggested remand of any water provider actions, nor has it asked that the Panel stop transferring potentially related water provider actions. In these circumstances, the status of proceedings in the MDL does not weigh against transfer.

Lastly, plaintiff in *Signature Flight Support* is an aviation services company that operates a worldwide network of private aviation terminals, many of which have fire suppression systems. According to its currently operative (second amended) complaint, defendant Johnson Controls, Inc. (JCI), has supplied Signature with "foams supplied and marketed by JCI as PFAS-free, including "(i) Jet-X Foam, (ii) other high expansion foams in the Johnson Controls product portfolio, or (iii) other aqueous film foams containing no PFAS and no ability to break down into PFOA." Compl. ¶ 30. Signature alleges that, despite JCI's representations to the contrary, testing by Signature at certain facilities has revealed that at least some JCI foams marketed as PFAS-free in fact contains PFAS. It seeks the costs of remediation of all Signature facilities found to have been contaminated with PFAS from JCI-supplied foams.[7]

---

[6] For example, Case Management Order No. 32, MDL No. 2873 (D.S.C. Jan. 15, 2025), ECF No. 6571, indicates that on-going product identification discovery is anticipated to produce information relevant to at least some water provider actions. *See id.* at 2 n.2 (Product ID Profile Forms are to include, for each site, a listing of other cases in the MDL involving nearby public water systems for which the site could be "the source of the AFFF contamination in any drinking water supply").

[7] The complaint specifically identifies sixteen Signature facilities and states that Signature "reasonably believes that at least each of [those] facilities contains a Johnson Controls foam product that is purported by Johnson Controls to be 'PFAS-free' . . . [but that] has been contaminated and will require cleanup and remediation . . . ." Compl. ¶ 33, 36. It further states that, "given the large portion of the fire suppression market controlled by Johnson Controls, Signature reasonably believes that Johnson Controls may have installed and later removed one or more of the above-referenced contaminated products at facilities in Signature's current portfolio. . ., leading to contamination of the fire suppression systems at those facilities with PFAS chemicals." *Id.* ¶ 37.

- 5 -

This motion arrives before the Panel in a somewhat unusual posture. When the motion to vacate the conditional transfer order and defendant's response were filed, the then-operative complaint included allegations that JCI had supplied "a foam product manufactured by Johnson Controls known as ANSULITE A334-LV 3%x3% AR-AFFF" at one of its facilities, and that, although Ansulite was marketed as PFAS-free, Signature believes it contained PFAS. After JCI opposed vacatur, arguing that the Ansulite allegations were express allegations of AFFF contamination, Signature—while not conceding that Ansulite was a "traditional" AFFF falling within the intended scope of the MDL[8]—amended its complaint to delete all references to Ansulite. Signature contends that its action pertains only to foam products deceptively marketed as PFAS-free—not to "traditional" AFFFs—and that its action consequently does not fall within the scope of the MDL.

We do not find plaintiff's arguments persuasive. Despite Signature's attempt to remove AFFF allegations from its action by amending its complaint during briefing, the current operative complaint still alleges that JCI supplied Signature or the previous owners of some of its properties with "aqueous film foams" and that Signature "reasonably believes" that at least sixteen of its facilities "contain[] a Johnson Controls foam product that is purported by [JCI] to be 'PFAS-free,'" but in fact the facilities were contaminated and will require cleanup and remediation of the fire suppression systems. Second Am. Compl. ¶¶ 18, 33, 36. Because the operative *Signature* complaint expressly includes an allegation that AFFFs were installed at some Signature facilities, transfer is appropriate. That Signature contends the AFFF in its facilities is not "traditional" AFFF makes no difference. When it created the AFFF MDL, the Panel "did not limit this litigation to particular types of AFFF products." Transfer Order at 2 n.3, MDL No. 2873 (J.P.M.L. July 31, 2019), ECF No. 483. Regardless of whether the AFFFs supplied to Signature by JCI were marketed as PFAS-free or as incapable of breaking down into PFOA or PFOS, and regardless of whether they were "long chain" or "short chain" AFFFs, Signature alleges that they were aqueous film-forming foams and that they contaminated its facilities with PFAS. These allegations bring the action within the scope of the MDL.

Moreover, transfer is warranted because Signature has already filed an action directly in the MDL alleging PFAS contamination of its properties due to the manufacture, marketing, and distribution of PFAS-containing products, including AFFF.[9] The direct-filed action lists over 150 Signature facilities that allegedly have been contaminated with PFAS, including from AFFF sources, and at least nine of those facilities also are at issue in the Eastern District of Wisconsin action. Where a plaintiff has brought both an AFFF action and a purported non-AFFF action, the Panel has stated that "[t]he critical determination is whether there is a clear overlap between the putative non-AFFF complaint and complaints in the MDL with respect to alleged contamination

---

[8] By a "traditional" AFFF, Signature appears to mean "long chain" or C8 AFFFs that concededly contain PFAS that breaks down into PFOA and PFOS. JCI contends that, although "short chain" or C6 AFFFs like Ansulite do contain PFAS, they do not break down into PFOA or PFOS.

[9] *Signature Flight Support LLC v. 3M Co., et al.*, No. 2:25-cv-01246 (D.S.C.). Signature's direct-filed complaint names 3M and other traditional AFFF defendants, including JCI affiliates Tyco Fire Products LP (formerly known as Ansul) and Chemguard, Inc., but not JCI.

2:25-cv-04824-RMG     Date Filed 06/02/25     Entry Number 94     Page 6 of 7
2:18-mn-02873-RMG     Date Filed 06/02/25     Entry Number 7237     Page 6 of 7
Case MDL No. 2873     Document 3536     Filed 06/02/25     Page 6 of 7

- 6 -

sites, such that the plaintiff's attempt to maintain separate non-AFFF and AFFF complaints is untenable." Order Denying Transfer, MDL No. 2873 (J.P.M.L. Oct. 4, 2023), ECF No. 2129. To warrant transfer of the purportedly non-AFFF action, such overlap must be "sufficiently 'substantial and concrete,' such that transfer to the MDL will enhance efficiency and convenience." *Id.* (internal citation omitted). Here, Signature's allegations in two separate complaints of PFAS contamination at its facilities, including at nine or more specific locations, will involve overlapping discovery as to the nature and source(s) of the PFAS contamination at those sites. This overlap is "sufficiently 'substantial and concrete'" to warrant transfer.

IT IS THEREFORE ORDERED that the actions listed on Schedule A are transferred to the District of South Carolina and, with the consent of that court, assigned to the Honorable Richard M. Gergel for coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

Karen K. Caldwell
Chair

Nathaniel M. Gorton      Matthew F. Kennelly
Roger T. Benitez         Madeline Cox Arleo



A TRUE COPY
ATTEST: ROBIN L. BLUME, CLERK

BY: *Sandra S. Shealy*
DEPUTY CLERK

IN RE: AQUEOUS FILM-FORMING FOAMS
PRODUCTS LIABILITY LITIGATION                                MDL No. 2873

## SCHEDULE A

<u>Southern District of Georgia</u>

THE MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH, GEORGIA v. 3M
   COMPANY, ET AL., C.A. No. 4:25-00058

<u>Eastern District of Wisconsin</u>

SIGNATURE FLIGHT SUPPORT LLC v. JOHNSON CONTROLS, INC.,
   C.A. No. 2:24-00845

<u>Western District of Wisconsin</u>

CITY OF WAUSAU, WI v. GEORGIA-PACIFIC, LLC, ET AL., C.A. No. 3:25-00004